## CIRCUIT COURT FOR WORCESTER COUNTY

**JOYCE A. BAINE**
**5741 Castle Hill Road**
**Snow Hill, MD 21863**

*Plaintiff,*

Case No. - _____

**SHELLPOINT MORTGAGE SERVICING**
**55 Beattie Place**
**Suite 500**
**Greenville, SC 29601**

     **And**

**U.S. BANK NATIONAL ASSOCIATION, as**
**Trustee, for Manufactured Housing**
**Contract Senior/Subordinate Pass-Through**
**Certificate Trust 2000-5**

**Serve: Resident Agent for**
     **Shellpoint Mortgage Servicing**
     **55 Beattie Place**
     **Suite 500**
     **Greenville, SC 29601**

*Defendants.*

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### Preliminary Statement

1.     This is an action filed by a consumer seeking equitable relief and damages for violations of law by Defendants for attempting to move forward with the foreclosure proceedings of Plaintiff's home when Defendants have violated the Maryland Consumer Protection Act, Maryland Mortgage Fraud Protection Act, the Real Estate Settlement Procedures Act and Fair Debt Collections Practices Act and allege breach of contract, fraud and negligence.

### JURISDICTION

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 12 U.S.C. § 2614, 15 U.S.C. § 1691e(f), and 28 U.S.C. § 1367.

### Parties

3.     Plaintiff Joyce A. Baine ("Ms. Baine", "Plaintiff") is a natural person and resides at 5741 Castle Hill Road, Snow Hill, MD 21863, the subject property which is a mobile home.  ("Subject Property"). The Subject Property is encumbered by a Consumer Credit Contract (Ex. 1) ("Subject Loan") and Deed of Trust (Ex. 2) both dated June 20, 2000. Mr. Clarence T. Poulson also executed both agreements with Ms. Baine, however, Mr. Poulson is deceased.

4.     Ms. Baine is a "person" within the meaning of The Real Estate Settlement Procedures Act of 1974 (12 U.S.C. §§ 2601 *et seq.*) ("RESPA") and the regulatory scheme established under Regulation "X" (12 C.F.R. Part 1024), in that she is an "individual" as such term is defined under RESPA (12 U.S.C. § 2602(5)).

5.     Defendant Shellpoint Mortgage Servicing is a mortgage servicing company with its principal place of business located at 55 Beattie Place, Suite 500, Greenville, SC 29601. Shellpoint Mortgage Servicing "Shellpoint" maintains a "Mortgage Lender

License" and is registered as a foreign limited liability company in the State of Maryland. Shellpoint is a "loan servicer" tasked with performing functions such as collecting payments, paying taxes and insurance payments, loss mitigation activities that are commonly known in the mortgage industry as "servicing." Shellpoint claims on its website that its America's 5th-largest non-bank mortgage servicer with over 2500 employees based of offices in Florida, South Carolina, Texas and Arizona. Shellpoint is responsible for servicing the Subject Loan.

6. As a mortgage servicer, Shellpoint is responsible for the day-to-day management of a mortgage loan, including collecting payments from borrowers, holding funds in escrow accounts for insurance and tax purposes, remitting such escrow funds, interacting with borrowers, and administering the mortgage foreclosure process. Mortgage servicers are also responsible for overseeing and implementing loss mitigation opportunities for borrowers to avoid loan delinquency and foreclosure.

7. At all times relevant to this action, Shellpoint serviced numerous loans that were "federally related" mortgage loans as that term is defined under RESPA and Regulation X.[1]

8. At all times relevant to this action, Shellpoint engaged in "servicing" federally related mortgage loans as that term is defined under RESPA and Regulation X.[2]

---

[1] Under RESPA "federally related" mortgage loans are secured by a lien on residential property designed principally for the occupancy of from one to four families, and are made by "creditors" that make or invest in residential real estate loans aggregating more than $1 million per year. See 12 U.S.C. § 2602(1) and regulation "X," 12 C.F.R. § 1024.02(b) (2016) p. 539.

[2] *See* 12 U.S.C. § 2605(i)(3) — "[t]he term 'servicing' means receiving ... scheduled periodic payments from a borrower pursuant to the terms of [federally related mortgage loans] including amounts for escrow accounts described in [12 U.S.C. § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the [loans]." U.S.C. § 2605(i)(3). *See also*

9. At all times relevant to this action, Shellpoint is acting as the agent of the claimed owner of the Subject Loan, U.S. Bank National Association, as Trustee, for Manufactured Housing Contract Senior/Subordinate Pass-Through Certificate Trust 2000-5 ("Trust 2000-5"). As such, Trust 2000-5 is vicariously liable for any actions taken by Shellpoint.

10. Defendant Trust 2000-5 appears to be a securitized trust wherein "pools" of loans are sold and purchased on the secondary market. Public information reveals that MEB Loan Trust, III is a Delaware Statutory Trust filed on May 20, 2019. Their company file number is listed as 7428940. MEB's website states it acquires and manages loans with a focus on non-performing mortgage loans, and defaulted 2nd mortgage loans.

## FACTS

11. One foreclosure is a tragedy, a million foreclosures is a statistic. The fraudulent, unfair, and abusive mortgage lending and servicing practices which led to the Great Recission and resulted in millions of Americans losing their homes are numerous and well-documented. Over the last decade, they have been the subject of academic research papers, congressional investigations, books, and even Oscar-nominated movies. But over the last few years, the topic has fallen out of the national consciousness even as the fraudulent, unfair, and abusive practices have continued. This case is about Ms. Baine's efforts to avoid tragedy and becoming a statistic.

12. The Subject Loan was originated by Conseco Servicing Corporation on June 20, 2000, as a Consumer Credit Contract. The loan is $108,961.82 which was released in three separate draws/advances.

---

12 C.F.R. 1024.2(b) (2016) p. 541 ("Servicer means a person responsible for the servicing of a federally related mortgage loan," with certain exceptions).

13.     Due to the death of Mr. Poulson, Ms. Baine was unable to pay the loan.

14.     Ms. Baine submitted an application for modification to the former servicer of the subject loan, Ditech Financial LLC ("Ditech"). Ditech denied that application via a letter dated September 12, 2018, claiming that the investor of the loan, Green Tree Legacy did not allow for past due amounts to be capitalized as part of a loan modification. Ms. Baine had never received any notice that the originator, Conseco, was no longer the owner/investor of her loan.

15.     Ms. Baine submitted another application for modification to Ditech. Ditech responded via a letter dated September 10, 2019, claiming that Trust 2000-5 was now the owner/investor of the Subject Loan and that it denied the application for modification. Ex. 4. Ms. Baine never received any notification that the owner/investor of her loan had changed.

16.     Shellpoint began servicing the loan as of March 16, 2020.

17.     Ms. Baine submitted an application for modification to Shellpoint to which Shellpoint denied via a letter dated May 27, 2021, claiming that an affordable payment could not be achieved by the maximum allowable term. (Ex. 5). Shellpoint failed to include in the denial letter an opportunity for Ms. Baine to appeal the denial pursuant to §1024.41(g), (3). The denial failed to provide the specific reason why Ms. Baine did not qualify for the loan modification and failed to provide inputs "NPV" utilized in calculating her eligibility for a loan modification.

18.     Despite Shellpoint's failure to advise Ms. Baine of her right to appeal the denial, Ms. Baine issued an appeal dated June 16, 2021, claiming the denial to her application for modification was deficient as it did not comply with 12 C.F.R. 1024.21(d). (Ex. 6).

19.     Shellpoint issued to Ms. Baine a letter dated August 6, 2021, claiming "we have a right to invoke foreclosure based on the terms of your mortgage contract". (Ex 7). This statement is false.

20.     Shellpoint issued a letter to Ms. Baine dated August 19, 2021. (Ex. 8). That letter claims that "the property was previously referred to an attorney to commence foreclosure proceedings on August 8, 2019". Shellpoint claims that no sale has been scheduled "at this time", implying that a foreclosure sale can be scheduled at any time. No attorney has ever contacted Ms. Baine nor has any foreclosure action been filed in the Circuit Court for Worcester County, yet Shellpoint is claiming legal fees and costs.

21.     Shellpoint issued a mortgage statement to Ms. Baine dated October 28, 2021, wherein a charge of $300 for "Attorney Cost Disbursement" and $1050.00 for "FC Costs Disbursement" were noted. (Ex. 9).  No foreclosure action has been, no Notice of Intent to Foreclose has been issued nor has any attorney issued any letter or notice to Ms. Baine regarding this loan.

22.     Ms. Baine issued a Notice of Error letter dated November 11, 2021, to Shellpoint questioning these attorney and foreclosure fees and costs.  (Ex 10). Shellpoint has failed to correct its error.

23.     MD Comm L. Code §3-104 defines a negotiable instrument as an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order if it:

     *[d]oes not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money,* but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess

6

judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor. (*Emphasis added*).

24.    The purported "Note" in this instant case is non-negotiable because it exceeds the limitations as required above.   It is referred to as a "Consumer Credit Contract" as opposed to a "note".

25.    The Consumer Credit Contract was drafted by the "lender" Conseco Finance Servicing Corporation ("Conseco").   Conseco is not the claimed owner/investor of the subject loan.   The Consumer Credit Contract contains no endorsements or amendments to any other entity despite Shellpoint's claims of a different owner/investor of the loan.

26.    When conducting a thorough analysis of the purported "Note" at issue it is clear that the instrument contains instructions and undertakings other than the payment of money on both the person ordering payment and the person promising payment. Therefore, the promissory Note in this instant case is non-negotiable.   See *von Frank v. Hershey Nat'l Bank*, 269 Md. 138,306 A.2d 207, (Md. 1973) holding that a note containing an express condition is not negotiable and is entirely outside the scope of Maryland's UCC and is to be treated as a simple contract.

27.    Pursuant to § 1692(e) of The Fair Debt Collections Practices Act (FDCPA), "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." By failing to provide proof as to the purported creditor to whom the debt is owed is misleading and deceptive as is the false claim that "Note" is a negotiable instrument.

28.    Shellpoint claims that the account is due for the February 10, 2018, payment. (Ex. 11).   The Consumer Credit Contract is not a promissory note, it is not signed

under seal and therefore contract law applies wherein the statute of limitations to enforce the contract is three years from the date of the breach.

29.    Shellpoint is threatening Ms. Baine with a foreclosure action when it cannot due to the expiration of the applicable statute of limitations.

30.    As the subject "Note" is not a negotiable instrument and it is not signed under seal it is a contract. "A cause of action accrues when the breach occurs." MD Comm. L. § 2-725(2) (2019). "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." MD Cts. & Jud. Proc. § 5-101 (2019).

### Loss Mitigation

31.    When evaluating a borrower for loss mitigation, the servicer must follow the sequence of options until reaching one for which the borrower is eligible and that is appropriate based on the borrower's circumstances. The hierarchy requires that the servicer first consider options designed to meet temporary hardships, then move on if necessary to options appropriate for permanent hardships.

32.    A loan modification is a written agreement between the servicer and the homeowner to change one or more of the original terms of the note to ease the homeowner's financial burden and, typically, to bring the loan current. Modifications may involve reducing the interest rate, changing from an adjustable rate to a fixed rate, extending the loan term, capitalizing delinquent payments, and forbearing or forgiving principal or arrears. The modification can be short-term (less than two years), long-term (two to five years) or for the life of the loan.

33.    In January 2013, the Consumer Financial Protection Bureau ("CFPB") issued several final rules concerning mortgage markets (2013 Title XIV Final Rules),

pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"). These new rules became effective on January 10, 2014, as the Mortgage Servicing Rules under the RESPA, Regulation X, 12 C.F.R. §1024. Any borrower more than 37 days from a foreclosure sale on January 10, 2014, who files a complete loss mitigation application is entitled to an evaluation of the complete loss mitigation application for all available loss mitigation options under 12 C.F.R. § 1024.41. This regulation specifically prohibits the act of 'Dual Tracking' wherein a homeowner's loan modification application review undergoes processing while the servicer/bank simultaneously carries out a foreclosure action.

34.   Pursuant to 12 C.F.R. §1024.41(g)(1) ), if a foreclosure action has already been filed and it is more than 37 days before a foreclosure sale, and the borrower submits a complete loss mitigation application (as in this instant case)[3], a servicer cannot "move for a foreclosure judgment [including a dispositive motion like a motion for default judgment, on the pleadings or summary judgment] or order of sale or conduct a foreclosure sale until one of the following has happened:

1. The servicer has denied the borrower's application for loss mitigation, and
2. The borrower has rejected all loss mitigation options offered to the borrower by the servicer; or
3. The borrower does not perform as required under a loss mitigation agreement.

Once the servicer receives a complete loss mitigation application, the servicer must "promptly" instruct any lawyers "it has retained to not proceed with filing for a foreclosure judgment or order of sale, or conducting a foreclosure sale, and if necessary, **to file for**

---

[3] Defendant has submitted all requested documents to Shellpoint and as such the servicer has a "complete package" under the CFPB requirements

a continuance with respect to any deadlines for filing a dispositive motion."

12 C.F.R. part 1024 Supplement I, Comment 41(g) -3 (Emphasis added).

### Ms. Baines Has Suffered and Will Continue to Suffer Harm From Shellpoint's and Trust 2000-5's Fraud, Errors, and Mistakes

35.     Ms. Baine continues to face the threat of foreclosure and has incurred

additional interest, attorneys' fees, late fees, and other costs as a result of Shellpoint's

actions and inactions and failure to remedy the errors committed.  Ms. Baine has also

suffered damage to her credit report as Shellpoint continues to report derogatory

information on her credit reports associated with the loan.

36.     In addition, Ms. Baine has suffered non-economic damages in the form of

emotional distress that has resulted in the physical manifestation of that distress

including, but not limited to: anxiety, stress, frustration, aggravation, loss of sleep, and

the fear of losing the home that where she is living.

### Count I - Violations of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 (Against Shellpoint)

37.     Ms. Baine reincorporates all preceding paragraphs as if set forth fully

herein.

38.     The mortgage loan servicing and transactions of Shellpoint, as set forth

herein, are governed by the Consumer Protection Act, Md. Code Ann., Com. Law § 13-

101, *et. seq.*

39.     Ms. Baine is a "consumer" as defined by § 13-101(c)(1)-(2) as she is the

actual purchaser or recipient of consumer goods, services, realty, or credit as this dispute

involves a loan on residential property that was purchased as Ms. Baine's primary residence and wherein she resides.

40. Shellpoint is a "Merchant" as defined by C.L. § 13-101(g) as Shellpoint directly or indirectly offers or makes available to consumers, consumer goods, services, realty, or credit as Shellpoint is the servicer of residential mortgage loans.

41. Shellpoint has acted as a collector under MCDCA by attempting to collect from Ms. Baine upon an alleged loan arising out of a consumer transaction. Comm. L. §14-201(b).

42. Section 13-303 prohibits unfair, abusive, or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The communications and servicing activities of Shellpoint as set forth above in paragraphs of this Complaint involve both the extension of credit and the collection of debts.

43. Section 13-301 contains a non-exclusive list of unfair, abusive, or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive. C.L. § 13-101(1),(3)

44. Ms. Baine alleges that Shellpoint engaged in the following unfair, abusive, or deceptive trade practices (among others):

a. Shellpoint is attempting to collect on a debt that is time barred.

b. Shellpoint falsely claims that the document signed by Ms. Baine is a promissory note.

c.  Shellpoint claims that Trust 2000-5 is the creditor of the loan and fails to provide any proof to substantiate that claim as requested by Ms. Baine.

45.   By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, Shellpoint has committed unlawful or deceptive trade practices in violation of the Maryland Consumer Protection Act.

46.   Shellpoint's conduct, misrepresentations, and omissions, as set forth above, had the capacity, tendency or effect of deceiving the Ms. Baine, who did rely on the misrepresentations and omissions of material fact, and who has suffered economic and non-economic damages (including emotional distress and mental anguish).

WHEREFORE, Ms. Baine respectfully requests the Court enter judgment in her favor and against Shellpoint and award her treble damages (including economic and non-economic) to be proven at trial in a sum in excess of $75,000; incidental and consequential damages; costs and attorney's fees incurred by Ms. Baine; and grant Ms. Baine such other and further relief as this Court deems proper.

### COUNT II – Violations of Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. § 7–401, *et seq.* (Against Shellpoint)

47.   Ms. Baine reincorporates all preceding paragraphs as if set forth fully herein.

48.   The Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § 7-401, *et. seq.*, governs the relationship between Shellpoint and Ms. Baine.

49.   The MMFPA works to protect the interest of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like Ms. Baine from so-called

professionals like Shellpoint to ensure a level, fair playing field between all borrowers and professionals.

50.     Ms. Baine is a homeowner in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiation and servicing of the mortgage loan.

51.     Md. Code Ann., Real Prop. § 7-401(c) provides that "Homeowner" means a record owner of residential real property. Ms. Baine is the record owner of the subject residential property in question and is, therefore, a Homeowner under this statute.

52.     Md. Code Ann., Real Prop. § 7-401(e) provides that "Mortgage lending process... include[s] [t]he ... of a mortgage loan."

53.     Md. Ann. Code, Fin. Inst. § 11-501(1) provides that "Mortgage loan' means any loan or other extension of credit that is: (i) secured, in whole or in part, by any interest in residential real property in Maryland, and (ii) for personal household or family purposes, in any amount."

54.     The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations, and omissions. In this instance, the MMFPA works to protect borrowers like the Ms. Baine from servicing companies like Shellpoint and ensure a level, fair playing field between all borrowers and professionals.

55.     Md. Code Ann., Real Prop. § 7-401(d) provides:
"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the

13

misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

4. Conspiring to violate any provisions of item (1), (2), or (3) of this section.

56. Shellpoint's knowing conduct and intention to defraud Ms. Baine is demonstrated by its dishonest statements and omissions and willful refusal to know the true facts exemplified *supra*.

57. Shellpoint committed mortgage fraud as defined in Md. Code Ann., Real Prop. § 7-401(d) by knowingly making deliberate misstatements, misrepresentations, or omissions (including but not limited to those discussed in this Complaint):

a. Shellpoint threaten Ms. Baine with the foreclosure of her home when they do not have the authority to do as the statute of limitations has lapsed.

b. Shellpoint claims Ms. Baine signed a promissory note when he did not.

c. Shellpoint claims Trust 2000-5 is the secured party/creditor but have failed to provide proof as such despite requests by Ms. Baine.

58.     All of the misstatements, misrepresentations, or omissions described herein were made with actual malice as Shellpoint had the intent to deceive Ms. Baine and it had actual knowledge of the falsity of its statements.

59.     Shellpoint's actions constitute a violation of Md. Code Ann., Real Prop. § 7-402.

~~WHEREFORE, Ms. Baine respectfully requests the Court enter judgment in her favor and against Shellpoint and award her treble damages (including economic and non economic)~~ to be proven at trial in a sum in excess of $75,000; punitive damages in an amount to be proven at trial; incidental and consequential damages; costs and attorney's fees incurred by Ms. Baine; and grant Ms. Baine such other and further relief as this court deems proper.

### COUNT III – FRAUD
### (AGAINST SHELLPOINT)

60.     Ms. Baine reincorporates all preceding paragraphs as if set forth fully herein.

61.     Shellpoint made false representations and intentional omissions of material fact as follows:

    a.  Shellpoint threaten Ms. Baine with the foreclosure of her home when they do not have the authority to do as the statute of limitations has lapsed.

    b.  Shellpoint claims Ms. Baine signed a promissory note when she did not.

    c.  Shellpoint claims Trust 2000-5 is the secured party/creditor but have failed to provide proof as such despite requests by Ms. Baine.

62.     All of the misstatements, misrepresentations, or omissions described herein were made with actual malice as Shellpoint had the intent to deceive Ms. Baine and it had

actual knowledge of the falsity of its statements as it was in possession of all documents and facts.

63.    Ms. Baine suffered economic and non-economic damages as a direct result of the reasonable reliance on Shellpoint's false representations and omissions.

WHEREFORE, Ms. Baine respectfully requests the Court enter judgment in her favor and against Shellpoint and award her actual damages (including economic and non-economic) to be proven at trial in a sum in excess of $75,000; punitive damages in the amount to be proven at trial; incidental and consequential damages; costs and attorney's fees incurred by Ms. Baine; and grant Ms. Baine such other and further relief as this court deems proper.

### COUNT IV - VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

### (AGAINST SHELLPOINT)

64.    Ms. Baine reincorporates all preceding paragraphs as if set forth fully herein.

65.    As debt collectors subject to the Federal Fair Debt Collection Practices Act, ("FDCPA"), Defendant Shellpoint is prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

66.    Shellpoint made false, deceptive and misleading representations in connection with the collection of the debt as follows:

a.    Shellpoint threatened Ms. Baine with the foreclosure of her home when they do not have the authority to do as the statute of limitations has lapsed.

b.    Shellpoint claims Ms. Baine signed a promissory note when she did not.

c. Shellpoint claims Trust 2000-5 is the secured party/creditor but have failed to provide proof as such despite requests by Ms. Baine.

WHEREFORE, Ms. Baine respectfully requests the Court enter judgment in her favor and against Shellpoint and award her Costs and reasonable attorney's fees pursuant to FDCPA; 15 U.S.C. § 1692k; statutory damages up to $1,000.00 pursuant to FDCPA, 15 U.S.C. § 1692k(2)(A) and grant Ms. Baine such other and further relief as this court deems proper.

## COUNT VI – VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 C.F.R. § 1024.41 , *ET SEQ.*

67.     Ms. Baine reincorporates all preceding paragraphs as if set forth fully herein.

68.     Shellpoint is a loan servicer of a federally related mortgage.

69.     Shellpoint denied Ms. Baine's application for a modification via a letter dated May 27, 2021. (Ex. 5).  That denial letter failed to allow Ms. Baine the opportunity to appeal the denial.

70.     Despite Shellpoint's failure to offer an opportunity to appeal the denial, Ms. Baine did issue an appeal via a letter dated June 16, 2021. (Ex. 6).

71.     In its denial, Shellpoint was required to comply with 12 C.F.R 1024.41(d) which requires that if the servicer denies the homeowner a loan modification, the servicer must state the "specific reason each modification option was denied".   Shellpoint failed to state the specific reason(s) the application was denied by failing to provide the "net present value(s)" "NPV" calculations that were utilized in the calculation to determine eligibility for a modification.

72.     Shellpoint had to provide any underwriting guidelines or requirements or restrictions as well as the specifics utilized in calculating eligibility such as interest rate, term and DTI. *Nash v. PNC Bank, N.A.*, CV TDC-16-2910, 2017 WL 1424317, at *4 (D. Md. Apr. 20, 2017) (denying defendant's motion to dismiss RESPA Claim because "'the specific applicable requirement' that was not met, the Court concludes that Nash has adequately alleged that the Denial Letter's explanation for denying his HAMP loan modification 'may lack the specificity required by 12 C.F.R. 1024.41(d)'")

73.     Shellpoint failed to include in its denial letter the opportunity for Ms. Baine to appeal the denial pursuant to §1024.41(g), (3).

74.     Shellpoint issued a mortgage statement to Ms. Baine dated October 28, 2021, wherein a charge of $300 for "Attorney Cost Disbursement" and $1050.00 for "FC Costs Disbursement" were noted. (Ex. 9).  No foreclosure action has been, no Notice of Intent to Foreclose has been issued nor has any attorney issued any letter or notice to Ms. Baine regarding this loan.

75.     RESPA requires that a servicer may only charge "bona fide fees" pursuant to 12 C.F.R § 1024.35(b)(5); fees that the servicer determined it had a reasonable basis to impose.  However, a servicer may not charge a fee for service that a service provider did not actually provide. Nor may a servicer charge an "estimated" fee.  Be advised that the inclusion of estimated costs is a violation of the FDCPA. *See Kevin Prescott v. Seterus, Inc.* 635 Fed. Appx. 640, 2015 U.S. App. LEXIS 20934 (11th Cir. Fla. 2015) and *Avilva v. Riexinger Associates, LLC,* 2016 U.S. App. LEXIS 5183, 2016 WL 1104797 (2nd Cir. 2016).

76.     Shellpoint has violated RESPA and the FDCPA by charging Ms. Baine fees and costs for work that has not been performed.

77.     Shellpoint has committed a "Foreclosure Violation" by threatening Ms. Bain with a foreclosure action when it does not have the authority to do so in violation of 12 C.F.R. § 1024.41 as loss mitigation is outstanding.

78.     Ms. Baine has suffered actual damages because of Shellpoint's failure to comply with RESPA by its failure to provide the "NPV" inputs; its failure to allow Ms. Baine the opportunity to appeal the denial and; Shellpoint's assessing fees that are not allowed pursuant to RESPA.

WHEREFORE, Ms. Baine respectfully requests the Court enter judgment in her favor and against Shellpoint for actual damages (including economic and non-economic) to be proven at trial in a sum in excess of $75,000; statutory damages; costs and attorney's fees incurred by Ms. Bain; and grant Ms. Bain such other and further relief as this Court deems proper.

### COUNT VII – Negligence
### (Against Shellpoint)

79.     Ms. Baine reincorporates all preceding paragraphs as if set forth fully herein.

80.     There was an intimate nexus required to establish liability where Shellpoint knew or should have known of Ms. Baine reliance on Shellpoint exercising due care when:

> a.    Shellpoint threatened Ms. Baine with the foreclosure of her home when they do not have the authority to do as the statute of limitations has lapsed.

> b.    Shellpoint claimed Ms. Baine signed a promissory note when she did not.

81.     Shellpoint claimed Trust 2000-5 is the secured party/creditor but have failed to provide proof as such despite requests by Ms. Baines.

82.    As a direct or proximate result of Shellpoint's tortious conduct, Ms. Baine suffered and will suffer economic and non-economic damages, including emotional distress such as anxiety and depression directly connected to the real threat of losing her home.

WHEREFORE, Ms. Baine respectfully requests the Court enter judgment in his favor and against Shellpoint for actual non-duplicative damages (including economic and non-economic) to be proven at trial in a sum in excess of $75,000; and grant Ms. Baine such other and further relief as this Court finds necessary and proper.

## COUNT VIII - Violation of The Truth in Lending Act, Section 131(g)
### (Against Trust-2000-5)

83.    Ms. Baine reincorporates all preceding paragraphs as if set forth fully herein.

84.    Section 131(g) of the TILA was enacted on May 30, 2009, as Section 404(a) of the Helping Families Save Their Homes Act. TILA Section 131(g) requires that a purchaser or assignee that acquires a loan to provide to the borrower disclosures in writing no later than 30 days after the date on which the loan was sold, transferred or assigned. The disclosure must include the name, address and telephone number of the new owner, the date of the transfer, among other disclosures.

85.    Trust 2000-5 has failed to issue to Ms. Baine any notice or disclosure pursuant to TILA Section 131(g) that it purchased the loan.

WHEREFORE, Ms. Baine respectfully requests the Court enter judgment in his favor and against Trust 2000-5 and award her damages in violations of the Truth in Lending Act, costs and reasonable attorney's fees and grant Ms. Baine such other and further relief as this court deems proper.

*Gerard P. Uehlinger*
Gerard P. Uehlinger
28 West Allegheny Avenue
Suite 1210
Towson, MD 21204
410-821-0025
uehlinger.law@verizon.net
AIS #: 7512010329
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests her case be heard by a jury.

*Gerard P. Uehlinger*
Gerard P. Uehlinger

GT-15-21-011 (5/99)

| | | |
|---|---|---|
| CONSECO FINANCE SERVICING CORP<br>2300 FALL HILL AVE #108<br>FREDERICKSBURG, VA 22401<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the Lender,<br>its successors and assigns. | CLARENCE T. POULSON<br>JOYCE A. BAINE<br>LOT 4 CASTLE HILL ROAD<br>SNOW HILL, MD 21863<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each Borrower above,<br>jointly and severally. | Loan Number 21431769<br>Date June 20, 2000<br>Maturity Date See ** Below<br>Loan Amount $ 108961.82<br>Renewal Of N/A |

**TERMS FOLLOWING A __ APPLY ONLY IF CHECKED**

For value received, I promise to pay to you at your address listed above the PRINCIPAL sum of _____
ONE HUNDRED EIGHT THOUSAND NINE HUNDRED SIXTY ONE AND 82/100 _____ Dollars $ 108961.82 _____

**N/A Single Advance:** I will receive all of this principal sum on N/A
N/A _____. No additional advances are contemplated under this note.

**XX Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note.
On the date of the first disbursement _____ I will receive the amount of $ ___ the initial advance _____ and future principal advances are contemplated. You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**Conditions:** The conditions for future advances are 1st advance(adv): real property appraisal & legal permits:
2nd adv: land improvement invoices, lien waivers, customer advance authorization:
2nd or 3rd adv: home & setup; final adv: certificate of occupancy or inspection report.

**INTEREST:** I agree to pay interest on the outstanding principal balance from the date of final advance, or
121 days after the first disbursement, whichever comes first. _____ at the rate of _____

_____
_____ 8.50 %
per year until the principal balance is fully paid

**N/A Variable Rate:** This rate may then change as stated below.
**Change Dates:** Each date on which the interest rate may change is called a Change Date. The interest rate may change N/A _____ and on every N/A _____ thereafter.
N/A
**The Index:** Beginning with the first Change Date, the interest rate will be based on the following Index: N/A
N/A _____
The most recent Index value available as of the date N/A 45 days N/A N/A _____ before each Change Date is called the "Current Index."
**Calculation of Change:** Before each Change Date, the Lender will calculate the interest rate, which will be N/A
N/A _____ the Current Index. The result of this calculation will be rounded
The new interest rate will become effective on each Change Date. Subject to any limitations below, this will be the new interest rate until the next Change Date.
**Limitations:** The interest rate will never be greater than N/A _____ % or less than N/A _____ %.
N/A The interest rate will never change on any single Change Date by more than N/A _____ %.
**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
N/A The amount of each scheduled payment will change. N/A The amount of the final payment will change.
N/A N/A

**ACCRUAL METHOD:** Interest will be calculated on a simple interest _____ basis.
**XX POST-MATURITY INTEREST:** Interest will accrue at the rate of 8.50 _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.
**XX LATE CHARGE:** If a payment is more than 15 _____ days late, I will be charged the lesser of
$5.00 or 5% of the unpaid amount of the installment
**XX NSF FEE:** If any instrument which I submit to you is returned unpaid for any reason, I will pay you a fee of $15.00

**N/A ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which N/A are N/A are not
included in the principal amount above: N/A
**XX STATUTORY AUTHORITY:** This loan is made under XX Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.
N/A N/A

** The Maturity Date is 359 months from the first scheduled payment of principal and interest.

**REAL ESTATE NOTE**
© 1984, 1991, 1993 Bankers Systems, Inc., St. Cloud, MN  Form GTH-RENLAZMD 6/6/99  LP82846      GT-15-21-011 (5/99) *(page 1 of 4)*

C.P.P.    J.a.B.

EXHIBIT 1

**PAYMENTS:** I agree to pay this note as follows:

INTEREST: I agree to pay accrued interest on the cumulative amounts advanced beginning 121 days after the date of the first disbursement, or on the date of the final disbursement, whichever comes first.

PRINCIPAL: I agree to pay the principal in 360 monthly installments, with interest, beginning approximately 30 days after the date of final disbursement.

INSTALLMENTS: In addition to the interest-only payments, if any, I agree to pay this note in 360 principal and interest payments. The first payment will be in the amount of $ 837.82 and will be due approximately 30 days from final disbursement. a payment of $ 837.82 will be due monthly thereafter.

The final payment of the entire unpaid balance of principal and interest will be due at the Maturity Date.

N/A In addition to the payments described above, I will pay a "balloon payment" of $ __N/A__ on N/A

**SECURITY:** This note is secured by (describe separate document by type (e.g., deed of trust) and date):
SEE "ADDITIONAL TERMS" SECTION ON PAGE 4 OF THIS DOCUMENT.

## ADDITIONAL TERMS OF THE NOTE

**GENERALLY** - The headings at the beginning of each section are for convenience only and are not to be used in interpreting the text of the section.

DEFINITIONS - "I," "me" or "my" means each borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - The interest to be charged on this loan is governed by the laws of the state of __Maryland__

_____. All other terms of this transaction are governed by the laws of the state of Maryland

The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and me.

I agree to cooperate with you regarding any requests after closing to correct errors made concerning this contract or the transaction and to provide any and all additional documentation deemed necessary by you to complete this transaction. I agree that you may enforce this agreement by judicial process and are entitled to attorney's fees, costs and disbursements incident to such enforcement.

**PAYMENTS** - Each payment I make on this loan will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record. If any payment due under this loan does not equal or exceed the amount of interest due, you may, at your option, increase the amount of the payment due and all future payments to an amount that will pay off this loan in equal payments over the remaining term of this loan, subject to any balloon payment indicated in the PAYMENTS section on page 1.

**PREPAYMENT** - I may prepay this loan in whole or in part at any time. I will not pay a penalty upon prepayment unless otherwise stated in the next sentence. If I prepay in full within __N/A__ months of the date of this note, I will pay you a penalty of __N/A__
N/A

Partial payments will not excuse or reduce any later scheduled payment until this note is paid in full.

**BALLOON PAYMENT** - If any scheduled payment of this loan is more than twice as large as the average of all other regularly scheduled payments and is secured by a second lien on residential real property, then at my request you will postpone payment of the balloon payment once for a period not to exceed six months. I understand that I must continue to make installment payments in the amount required prior to maturity during the extension period but no closing costs or extension fees will be imposed as a result of the extension.

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If this is a multiple advance loan, interest will accrue: __as indicated on Page 1 of this document__

If "Variable Rate" is checked on page 1, I will pay interest at the rates in effect from time to time. The interest rate(s) and other charges on this loan will never exceed the highest rate or charge allowed by law for this loan. If the index specified on page 1 ceases to exist, I agree that you may substitute a similar index for the original.

**INDEX** - If you and I have agreed that the interest rate on this note will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this note. You do not guaranty, by selecting any index, that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

**ACCRUAL METHOD** - The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST-MATURITY INTEREST** - Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified on page 1. For purposes of this section, final maturity occurs:
(a) If this loan is payable on demand, on the date you make demand for payment;
(b) If this loan is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier;
(c) On the date of the last scheduled payment of principal; or
(d) On the date you accelerate the due date of this loan (demand immediate payment).

**SINGLE ADVANCE LOANS** - If this is a single advance loan you and I expect that you will only make one advance of principal. However, you may add other amounts to the principal if you make any payments described in the PAYMENTS BY LENDER section on page 3.

© 1984, 1991, 1993 Bankers Systems, Inc., St. Cloud, MN Form GTH-RENLAZMD 5/5/89   LP82848

R.S.P.   S.a.B.

GT-15-21-011 (5/99) *(page 2 of 4)*

**MULTIPLE ADVANCE LOANS** - If this is a multiple advance loan, you and I expect that you will make more than one advance of principal, subject to the conditions of any separate agreement.

**PAYMENTS BY LENDER** - If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**REAL ESTATE OR RESIDENCE SECURITY** - If this loan is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

**ASSUMPTION** - This note and any document securing it cannot be assumed by someone buying the secured property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the property securing this note, I will be in default on this loan. You may proceed against me under any due on sale clause in the security agreement, which is incorporated by reference.

**DEFAULT** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, I will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:
(a) I fail to make a payment in full when due;
(b) I die, am declared incompetent, or become insolvent;
(c) I fail to keep any promise I have made in connection with this loan;
(d) I fail to pay, or keep any other promise on, any other loan or agreement I have with you;
(e) I make any written statement or provide any financial information that is untrue or inaccurate at the time it is provided;
(f) Any creditor of mine attempts to collect any debt I owe through court proceedings, set-off or self-help repossession;
(g) The Property is damaged, destroyed or stolen;
(h) I fail to provide any additional security that you may require; or
(i) Any legal action (such as a partnership or corporation) that has agreed to pay this note merges, dissolves, reorganizes, ends its business or existence, or a partner or majority stockholder dies or is declared incompetent.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, if I am in default on this loan or any agreement securing this loan, you may:
(a) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due;
(b) Use the right of set-off as explained below;
(c) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
(d) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(e) Use any remedy you have under state or federal law; and
(f) Use any remedy given to you in any agreement securing this loan.

By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

**COSTS OF COLLECTION AND ATTORNEYS' FEES** - I agree to pay you all reasonable costs you incur to collect this debt or realize on any security. This includes, unless prohibited by law, reasonable attorneys' fees. This provision also shall apply if I file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(a) Any deposit account balance I have with you;
(b) Any money owed to me on an item presented to you or in your possession for collection or exchange; and
(c) Any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand under the terms of this note at the time you exercise your right of set-off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**OTHER SECURITY** - Any present or future agreement securing any other debt I owe you also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

**ARBITRATION** - All disputes, claims, or controversies arising from or relating to this note or the relationships which result from this note, or the validity of this arbitration clause or the entire note, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim

© 1984, 1991, 1993 Bankers Systems, Inc., St. Cloud, MN Form GTH-RENLAZMD 6/6/96

GT-15-21-011 (5/99) (page 3 of 4)

arising from or relating to this note. The parties agree and understand that the arbitrator shall have all powers provided by law and the note. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration in this note, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

**OBLIGATIONS INDEPENDENT -** I understand that my obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this loan. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**WAIVER -** I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**PRIVACY -** I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish on a regular basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**FINANCIAL STATEMENTS -** I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**PURCHASE MONEY LOAN -** If this is a Purchase Money Loan, you may include the name of the seller on the check or draft for this loan.

**PURPOSE:** The purpose of this loan is ___consumer___

Signature for Lender

**CONSECO FINANCE SERVICING CORP**

By: _____

    Signature               Date

Its: _____

**ADDITIONAL TERMS:**

This note is secured by:

A Mortgage/Deed of Trust dated today on the real property located at:

___LOT 4 CASTLE HILL ROAD___

___SNOW HILL, MD  21863___

This loan is also secured by a 1st lien on the following:

___1999 REDMAN HOMES  SILVER LAKE___

___SER #: 14002504AB___

ANY UNDISBURSED PORTIONS OF THE AMOUNT FINANCED HEREIN SHALL BE APPLIED TO THE PRINCIPAL BALANCE OF THE CONTRACT. THIS WILL NOT REDUCE MY MONTHLY PAYMENT AMOUNT ON THE CONTRACT, BUT MAY REDUCE THE TOTAL NUMBER OF MONTHS I MUST PAY THE CONTRACT.

---

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

---

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGES 1, 2, 3 AND 4).** I have received a copy on today's date.

Signature  CLARENCE T. POULSON      Date  6/20/00

Signature  JOYCE A. BAINE      Date  6/20/00

Signature             Date

Signature             Date

© 1984, 1991, 1993 Bankers Systems, Inc., St. Cloud, MN  Form GTH-RENLAZMD  6/6/99

WORCESTER COUNTY CIRCUIT COURT (Land Records) SVH 2875, p. 0008, MSA_CE31_3022. Date available 06/30/2003. Printed 04/15/2022.

LIBER 2875 FOLIO 008

THIS DEED PREPARED BY DON E. RICHARDSON, AN ATTORNEY ADMITTED
TO PRACTIVE BEFORE THE COURT OF APPEALS OF THE STATE OF MARYLAND

Don E. Richardson
When recorded return to:

FILED
00 JUN 26 AM 10: 54
STEPHEN V. HALES
CLK. CT. CT.
WOR. CO.

————State of Maryland———        PURCHASE        Space Above This Line For Recording Data————
GT-15-21 090 (9/94)                  (MONEY)
                          DEED OF TRUST
                     (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is ...June. 20,.. 2000
and the parties, their addresses and tax identification numbers, if required, are as follows:

    GRANTOR: CLARENCE T. POULSON and JOYCE A. BAINE
             LOT 4 CASTLE HILL ROAD
             SNOW HILL, MD 21863

    ...... If checked, refer to the attached Addendum incorporated herein, for additional Grantors,
    their signatures and acknowledgments.

    TRUSTEE:
             David B. Goldstein, Attorney at Law

    LENDER:  CONSECO FINANCE SERVICING CORP
             2300 FALL HILL AVE 0108
             FREDERICKSBURG, VA 22401

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is
acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance
under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in
trust for the benefit of Lender, with power of sale, the following described property:
        All of the property located at LOT 4 CASTLE HILL ROAD_____, in the
City/Town/Village of SNOW HILL_____, County of WORCESTER_____, State of MD, in
which the Borrower has an ownership, leasehold or other legal interest. This property is more
particularly described on the schedule titled "Additional Property Description" which is attached
hereto as Exhibit A, together with a security interest in that certain 1999, 76 X 28
SILVER LAKE____ mobile home, serial number 14002504AB_____.
        The Borrower does hereby authorize the Lender or its assigns to obtain a more detailed property
description after the Borrower has signed the Mortgage, and to attach Exhibit A after the Borrower
has signed the Mortgage.

MARYLAND · DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA)
© 1994 Bankers Systems, Inc., St. Cloud, MN (1 800-397-2341) Form GTH-MTGLAZMD 10/11/94        GT-15-21-090 (9/94) (page 1 of 7)

EXHIBIT 2

LIBER 2875 FOLIO 009

WORCESTER COUNTY CIRCUIT COURT (Land Records) SVH 2875, p. 0009, MSA_CE31_3022. Date available 09/16/2005. Printed 04/15/2022.

The property is located in ......WORCESTER........................................................ at ...............................
                                                 (County)

LOT 4 CASTLE HILL ROAD .................. , ......SNOW HILL...... , Maryland ......21863......
      (Address)                            (City)                      (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $..........108961.82.......... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**4. SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
  A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

     A Universal Note or Manufactured Home Retail Installment Contract and Security Agreement executed by Buyers/Borrowers.

The above obligation is due and payable on 360 months from last construction disbursement if not paid earlier.
  B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
  C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
  D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.
This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

**5. PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**6. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey, and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
  A. To make all payments when due and to perform or comply with all covenants.
  B. To promptly deliver to Lender any notices that Grantor receives from the holder.
  C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**8. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

© 1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form GTH-MTGLAZMD, 10/11/94      GT-15-21 090 (9/94) *(page 2 of 7)*

LIBER2875 FOLIO 0 1 0

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

   Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

   Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument, and that this assignment will remain effective during any period of redemption by the Grantor until the Secured Debt is satisfied. Grantor agrees that Lender is entitled to notify Grantor or Grantor's tenants to make payments of Rents due or to become due directly to Lender after such recording, however Lender agrees not to notify Grantor's tenants until Grantor defaults and Lender notifies Grantor of the default and demands that Grantor and Grantor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

WORCESTER COUNTY CIRCUIT COURT (Land Records) SVH 2875, p. 0010, MSA_CE31_3022. Date available 06/30/2003. Printed 04/15/2022.

**LIBER 2875 FOLIO 011**

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Grantor, in accordance with the Real Property Article of the Annotated Code of Maryland and the Maryland Rules of Procedure and all amendments and supplements thereto, does hereby (a) authorize Trustee, at the request of the Lender, to advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates, following the giving of notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by applicable law in effect at the time of the proposed sale; and (b) declare Grantor's assent to the passage of a decree by a court of proper jurisdiction for the sale of the Property in one or more parcels, the Grantor further assenting to the granting to any trustee appointed by such court of all the rights, powers and remedies granted to the Trustee in this Deed of Trust together with any and all rights, powers and remedies granted by the decree. Neither the power of sale or assent to decree granted in this section shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Deed of Trust.

Upon sale of the property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

© 1994 Bankers Systems, Inc., St. Cloud, MN (1-800 397-2341) Form GTH MTGLAZMD 10/11/94   GT-15-21 090 (9/94) *(page 4 of 7)*

WORCESTER COUNTY CIRCUIT COURT (Land Records) SVH 2875, p. 0011, MSA_CE31_3022. Date available 06/30/2003. Printed 04/15/2022.

WORCESTER COUNTY CIRCUIT COURT (Land Records) SVH 2875, p. 0012, MSA_CE31_3022. Date available 06/30/2003. Printed 04/15/2022.

LIBER 2875 FOLIO 012

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any

© 1994 Bankers Systems, Inc., St. Cloud, MN (1-800 397 2341) Form CTM MTGLAZMD 10/11/94       CT-15-21-050 (9/94) (page 5 of 7)

LIBER 2875 FOLIO 13

WORCESTER COUNTY CIRCUIT COURT (Land Records) SVH 2875, p. 0013, MSA_CE31_3022, Date available 09/16/2005, Printed 04/15/2022.

section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

26. **WAIVERS.** Except to the extent prohibited by law, Grantor waives any right to appraisement and marshalling of liens and assets relating to the Property.

27. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

..... **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

..XX.. **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

..... **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

..... **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable items]
..... Condominium Rider ..... Planned Unit Development Rider ..... Other .....................
..... **Purchase Money Mortgage.** The Secured Debt includes money which is used in whole or in part to purchase the Property.
..... **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_Clarence T. Poulson_ (Seal)     _Joyce A. Baine_ (Seal)
(Signature) CLARENCE T. POULSON  (Date)   (Signature)  (Date)

_____ (Seal)     _____ (Seal)
(Signature)  (Date)   (Signature)  (Date)

**ACKNOWLEDGMENT:**

STATE OF ..Maryland..., COUNTY (OR CITY) OF ..Worcester.. } ss.
I hereby Certify, that on this ..20.. day of ..March.. 2002.., before me, the subscriber, a Notary Public of the State of Maryland in and for the City/County aforesaid, personally appeared ..Clarence T. Poulson & Joyce A. Baine..
known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that she/he/they executed the same for the purposes therein contained.
AS WITNESS: my hand and notarial seal.

_____
(Notary Public)

My commission expires:
(Seal)

Brenda K. Lloyd, Notary Public
Wicomico County
State of Maryland   (page 6 of 7)
My Commission Expires
Sept. 1, 02

© 1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form GTH-MTGLAZMO 10/11/94

WORCESTER COUNTY CIRCUIT COURT (Land Records) SVH 2875, p. 0014, MSA_CE31_3022. Date available 06/30/2003. Printed 04/15/2022.

LIBER 2875 FOLIO 14

EXHIBIT "A"

ATTACHMENT TO DEED OF TRUST

All that lot, tract or parcel of land situate, lying and being in the Second Tax District of Worcester County, State of Maryland, and being located on and binding upon the Easterly side of Castle Hill Road, (40' Right of Way) and being more particularly shown and designated as Lot 4 on a plat entitled "Fox Ridge Subdivision", prepared by Madison Bunting, Surveyor, and recorded among the Land Records of Worcester County, Maryland in Plat Cab. 162/9; said lot containing 4.893 acres of land, more or less; and

BEING in all respects the same land conveyed unto Clarence Poulson and Joyce A. Baine, as joint tenans, from David Bassett and Kathleen Bassett, his wife, by deed of even date herewith and intended to be recorded among the Land Records of Worcester County, Maryland immediately prior hereto.

TOGETHER with the Grantor's right, title and interest in and to a 5' strip of land along the Easterly side of Castle Hill Road, shown on the aforesaid plat as "5' wide road widening strip".

```
IMP FD SURE $        5.00
RECORDING FEE       20.00
RECORDATION T      528.00
TOTAL              553.00
Res# HORE    Rcpt # 62989
SVH    3984   Blk # 2395
Jun 26, 2000      10:55 am
```

JUN 26 2000    The foregoing instrument filed for record and is accordingly recorded among the land records of Worcester County, Maryland.          _____ Clerk



Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Phone: 1-800-643-0202
www.ditech.com

09/12/2018

BAINE JOYCE A
5741 CASTLE HILL RD
SNOWHILL MD 21863

RE:   Ditech Financial LLC ("Ditech")
      Account Number: 21431769

Dear RICHARD:

Thank you for contacting us about your mortgage.  You were evaluated for mortgage payment assistance based upon the eligibility requirements of Green Tree Legacy, the owner of your mortgage account. Based on a careful review of the information you provided to us, you are not eligible for a modification due to the following reason(s):

The investor on your account does not allow for past due amounts to be capitalized as part of a loan modification. As a result of this limitation, we are unable to offer you a modification.

You have the right to appeal the determination not to offer you loss mitigation assistance.  If you would like to appeal, you must contact us within 30 calendar days from the date of this notice and state you are requesting an appeal of this decision. For appeals requested in writing, you must include your name, property address and mortgage account number. You may also specify the reasons for your appeal and provide any supporting documentation. Your right to appeal expires 30 calendar days from the date of this notice. Any appeal requests or documentation received after that date may not be considered.  Please contact us Monday – Friday 7 a.m to 8 p.m., and Saturday 7 a.m to 1 p.m. CST at 1-800-643-0202, or at the below-referenced mailing address and fax number.

Ditech Financial LLC
Attn: Loss Mitigation, T214
2100 E. Elliot Rd, Bldg 94
Tempe, AZ 85284
(877) 612-2422

If you elect to appeal, we will provide you with a written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final and not subject to further appeal.



Generic Waterfall Modification Denial & Ineligible Letter, 01/18/2017                    LTR-423

EXHIBIT 3

You may be eligible for other workout options offered by Ditech because you are not eligible for an account modification. Some of the programs that may be available include:

- Short Sale – A short sale allows you to avoid foreclosure by selling your property and paying off your account. If you sell your property for less than the total amount owed on the account, Ditech may accept that amount as full satisfaction of your account. Taking this action will not save your home, but Ditech may pay you cash upon completion of the sale of your home.

- Deed-In-Lieu of Foreclosure – A deed-in-lieu of foreclosure would allow you to voluntarily deed your property to in order to satisfy the account. Taking this action will not save your home, but Ditech may pay you cash upon completion of the Program.

Our credit decision may have been based in part upon information obtained in a report from the below-referenced consumer reporting agency listed. You have the right under the Fair Credit Reporting Act to obtain a free copy of your credit report. You must request your free copy within 60 days of the date of this letter. You also have the right to dispute the information contained in your credit report with the credit reporting agency. The credit reporting agency did not make the decision regarding your ineligibility and is not able to provide you with specific reasons as to why you are not eligible for an account modification.

| | |
|---|---|
| Credit Reporting Agency: | Trans Union Consumer Solutions |
| Reporting Agency Address: | P.O. Box 2000<br>Chester, PA 19022-2000 |
| Toll Free Number: | 1-800-916-8800 |
| Web Address: | http://annualcreditreport.transunion.com/entry/disputeonline |

We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change, depending on how the information in your consumer report changes.

Your credit score: 594

Date: 06/15/2018

Scores range from a low of 300 to a high of 850

Key Factors that adversely affected your credit score:

SERIOUS DELINQUENCY, AND PUBLIC RECORD OR COLLECTION FILED
  LENGTH OF TIME REVOLVING ACCOUNTS HAVE BEEN ESTABLISHED
  LENGTH OF TIME SINCE DEROGATORY PUBLIC RECORD OR COLLECTION IS TOO SHORT
  PROPORTION OF BALANCES TO CREDIT LIMITS IS TOO HIGH ON BANK REVOLVING OR OTHER
REVOLVING ACCOUNTS
If you have any questions regarding your credit score, you should contact Trans Union Consumer Solutions at:

Address: P.O. Box 2000, Chester, PA 19022-2000    Telephone number: 1-800-916-8800

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, which can be contacted at:

Federal Trade Commission
Equal Credit Opportunity
Washington, DC 20580

Counseling is available at no charge from HUD-approved counselors. The HOPE Hotline at 1-888-995-HOPE. This housing counseling on-demand service is available 24-hours a day/7-days a week in Spanish and English (other languages available on request).  You may also visit http://www.hud.gov/offices/hsg/sfh/hcc/fc/.

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information:  PO Box 6176 Rapid City SD 57709-6176.

Sincerely,

Ditech
1-800-643-0202
Monday – Friday 7 a.m to 8 p.m., and Saturday 7 a.m to 1 p.m. CST

**ditech.**
HOME LOANS

Ditech Financial LLC
P.O. Box 15009
Tempe, AZ 85284-0109

September 10, 2019

JOYCE A BAINE
5741 CASTLE HILL RD.
SNOW HILL, MD. 21863

RE:   Ditech Financial LLC ("Ditech")
      Account Number:      70134044

**IF YOUR OBLIGATION TO REPAY THIS ACCOUNT WAS DISCHARGED IN BANKRUPTCY, ANY PAYMENT INDICATED HERIN IS VOLUNTARY.THIS IS NOT AN ATTEMPT TO COLLECT THE DEBT. YOU ARE NOT OBLIGATED TO MAKE PAYMENTS AND ANY AMOUNT(S) YOU DO PAY DITECH IS AT YOUR DISCRETION.**

Dear Joyce Baine:

Thank you for contacting us about your mortgage. You were evaluated for mortgage payment assistance based upon the eligibility requirements of U.S. Bank National Association, as Trustee, for Manufactured Housing Contract Senior/Subordinate Pass-Through Certificate Trust 2000-5, the owner of your mortgage account. We have determined that you are ineligible for a mortgage modification due to the following eligibility requirements.

- The investor on your account does not allow for past due amounts to be capitalized as part of a loan modification. As a result of this limitation, we are unable to offer you a modification.

You have the right to appeal the determination not to offer us loss mitigation assistance. If you would like to appeal, you must contact us within 14 calendar days from the date of this notice and state you are requesting an appeal of this decision. For appeals requested in writing, you must include your name, property address and mortgage account number. You may also specify the reasons for your appeal and provide any supporting documentation. Your right to appeal expires 14 calendar days from the date of this notice. Any appeal requests or documentation received after that date may not be considered. Please contact us Monday – Friday 7 a.m. to 8 p.m. and Saturday 7 a.m. to 1 p.m. CST at 1-800-643-0202, or at the below-referenced mailing address and fax number.

Ditech Financial LLC
P.O. Box 15009
Tempe, AZ 85284-0109
Fax: 1-855-895-4481

If you elect to appeal, we will provide you a written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final and not subject to further appeal.

You may be eligible for other workout options offered by Ditech because you are not eligible for the account modification. Some of the programs that may be available include:

- Short Sale – A short sale allows you to avoid foreclosure by selling your property and paying off your account. If you sell your property for less than the total amount owed on the account, Ditech may accept that amount as full satisfaction of your account. Taking this action will not save your home, but Ditech may pay you cash upon completion of the sale of your home.

- Deed-In-Lieu of Foreclosure – A deed-in-lieu of foreclosure would allow you to voluntarily deed your property to Ditech in order to satisfy the account. Taking this action will not save your home, but Ditech may pay you cash upon completion of the Program.

- Forbearance – A forbearance is when the lender delays its right to exercise foreclosure if the borrower can catch up to his payment schedule in a certain time.

Generic Modification Denial & Ineligible Letter, 12/28/2015                                        LTR-479

*EXHIBIT  4*

It is your responsibility to contact Ditech to discuss your above-referenced account. If you wish to explore your options or have any other questions, please contact your account representative. Your assigned account representative is Barbara B. at 1-855-858-3873, extension 86991.

Our credit decision may have been based in part upon information obtained in a report from the below-referenced consumer reporting agency listed. You have the right under the Fair Credit Reporting Act to obtain a free copy of your credit report. You must request your free copy within 60 days of the date of this letter. You also have the right to dispute the information contained in your credit report with the credit reporting agency. The credit reporting agency did not make the decision regarding your ineligibility and is not able to provide you with specific reasons as to why you are not eligible for a account modification.

Credit Reporting Agency:              TRANSUNION

Reporting Agency Address:             2 BALDWIN PLACE, P.O. BOX 1000
                                       CHESTER, PA 19022

Toll Free Number:                     800-888-4213

Web Address:                          http://www.transunion.com

We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change, depending on how the information in your consumer report changes.

Your credit score: Not Scored

Date: N/A

Scores range from a low of 350 to a high of 850

Key factors that adversely affected your credit score:

If you have any questions regarding your credit score, you should contact TRANSUNION at:

Address:  2 BALDWIN PLACE, P.O. BOX 1000 CHESTER, PA 19022     Telephone number: 800-888-4213

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, which can be contacted at:

                        Federal Trade Commission
                        Equal Credit Opportunity
                        Washington, DC 20580

Counseling is available at no charge from HUD-approved counselors through the HOPE Hotline: 1-888-995-HOPE. This housing counseling on-demand service is available 24-hours a day/7-days a week in Spanish and English (other languages available on request). You may also visit **http://www.hud.gov/offices/hsg/sfh/hcc/fc/**.

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information:  P.O. BOX 15009 Tempe, AZ 85284-0109

Sincerely,

Ditech
1-800-643-0202
Monday – Friday 7 a.m. to 8 p.m. and Saturday 7 a.m. to 1 p.m. CST

Generic Modification Denial & Ineligible Letter, 12/28/2015                                LTR-479



**Shellpoint**

Mortgage Servicing

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



Phone Number: 866-825-2174
Fax: 866-467-1187
Email: Lossmitigation@shellpointmtg.com
Mon – Thurs: 8:00AM-6:00PM
Fri: 8:00AM-5:00PM

S-SFRECS20  L-2501  R-106
PE5Z2O00300051 - 666544128.I00132

CLARENCE T POULSON
JOYCE A BAINE
5741 CASTLE HILL RD
SNOW HILL MD 21863-4403

| Loan Number: | 0579970118 |
|---|---|
| Principal Balance: | $83,282.10 |
| Property: | 5741 CASTLE HILL RD |
| | SNOW HILL, MD 21863 |

05/27/2021

Dear Homeowners:

Thank you for contacting us about your mortgage. You were evaluated for mortgage payment assistance based on the eligibility requirements of U.S. Bank National Association, as Trustee, for Manufactured Housing Contract Senior/Subordinate Pass-Through Certificate Trust 2000-5, the owner of your mortgage loan.

We evaluated you for the following loan modification product(s). Based on our review of your loan, property and financial circumstances, you are not eligible for the following loan modification due to the following reason(s):

- Standard Modification – Your request for a loan modification was denied because an affordable monthly payment could not be achieved without extending the maturity date beyond the maximum allowable term.

**Other potential options to avoid foreclosure.** We understand that you may be facing financial difficulties. While Shellpoint is not able to approve you for a loan modification, we may have other programs available to help.

While it may be difficult to make the decision to leave your home, you are conditionally approved for the programs listed below. These can allow you a fresh start toward a new home, and may even pay you to help cover relocation expenses. Please call us at 866-825-2174 to discuss further documentation required for these programs in order to be fully approved.

- **Short Sale** – A short sale involves the sale of the home for less than the balance you owe. If the owner of your loan agrees to a short sale, you can sell your home and pay off all (or a portion of) your balance with the proceeds.

- **Deed-in-Lieu of Foreclosure** – With a Deed-in-Lieu of Foreclosure, you transfer the title of your property to the owner of your mortgage in exchange for a release from your loan and payments.

The most important thing is to avoid foreclosure, but there are other benefits to the fresh start options that may be available to you.

**Benefits include:**
- Eliminate your remaining mortgage debt
- Avoid the negative impact of a foreclosure
- May be eligible for relocation assistance
- Start repairing your credit sooner than if you went through a foreclosure
- Flexible exit options let you leave the home immediately, or consider other ways to transition

**If you can, please pay in full immediately.** We recognize that being denied for a loan modification may be disappointing news for you. However, in order to avoid additional expenses resulting from late payments and to avoid foreclosure, it is important that you make the full payment listed above or contact us regarding the additional option we presented above as quickly as possible.
Remember, your mortgage payment was due on 02/10/2018 and has accrued late charges of $0.00. To avoid additional foreclosure activity, it is important that you make your full mortgage payment and late charges in the amount of $44,290.81 immediately.

Please send your payment to:

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

*EXHIBIT 5*

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I0000001 A-0579970118 0102 I0400

If your mortgage loan is reinstated and you subsequently experience a financial hardship, you may contact us to request reconsideration for mortgage payment assistance or other alternatives to foreclosure.

If you have questions about this letter and how to reinstate your mortgage, please contact us at 866-825-2174. If you have concerns about the evaluation of your mortgage for foreclosure alternatives, then please contact Monica Salomon at 877-395-8403.

Making decisions about your mortgage when you're facing financial challenges can be uncomfortable. With so much information available, it's hard to know where to turn. Shellpoint is ready to assist you in exploring the best option for your individual situation!

For future communications regarding the status of your loan or your application for loss mitigation, you may contact your SPOC (Single Point of Contact) by phone at 877-395-8403 ext. 14794. Alternatively, you may visit our Borrower Web Portal at www.shellpointmtg.com or email your SPOC directly at msalomon@shellpointmtg.com.

---

### Additional Resources:

For a list of HUD-approved housing counseling agencies that can provide free foreclosure prevention and debt management information, as well as translation or other language assistance, contact one of the following federal government agencies.
- The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling
- The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

---

Sincerely,

Loss Mitigation Department
Shellpoint Mortgage Servicing



The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is: Federal Trade Commission, Equal Credit Opportunity, 600 Pennsylvania Avenue, NW, Washington, DC 20580.

**Please read the following important notices as they may affect your rights.**

NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

Shellpoint Mortgage Servicing utilizes third-party providers in connection with the servicing of your loan, but Shellpoint Mortgage Servicing remains responsible for all actions taken by third-party providers.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-825-2174 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-825-2174 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电 866-825-2174，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**JOYCE A. BAINE (POULSON)**
**5741 CASTLE HILL ROAD**
**SNOW HILL, MD 21863**

**JUNE 16, 2021**

### APPEAL OF LOAN MODIFICATION DENIAL NOTICE OF ERROR

SHELLPOINT
P.O. BOX 10826
GREENVILLE, SC 29606-0826

VIA EMAIL: LOSSMITIGATION@SHELLPOINTMTG.COM

RE:  **Property Address:  5741 Castle Hill Rd., Snow Hill, MD 21863**
       **Borrowers:      Clarence Poulson (deceased) and Joyce Baine**
       **Loan Number:        0579970118**
       **Denial Date:    May 27, 2021**

Dear Shellpoint Mortgage Servicing, ("Shellpoint"):

Shellpoint issued to me a letter dated May 27, 2021, denying my application for a loan modification. That letter failed to provide me an opportunity to appeal that denial pursuant to the Consumer Financial Protection Bureau (CFPB).

### APPLICABLE LAW AND REGULATIONS

The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the "Dodd-Frank Act") transferred rulemaking authority for RESPA to the United States Consumer Financial Protection Bureau (CFPB) ("the Bureau"). The Dodd-Frank Act also added a section to RESPA giving the Bureau the authority to establish prohibitions on servicers of federally-related mortgage loans for the purpose of carrying out the consumer protection goals of RESPA.

In January 2013, the Bureau issued several final rules to address the systemic problems in the mortgage servicing industry described above and to implement protections for borrowers with regard to mortgage servicing. These new rules amended 12 C.F.R. Part 1024, RESPA (Regulation X), and became effective on January 10, 2014.

Specifically, the Bureau enacted a rule requiring early intervention and communication with delinquent borrowers. "Servicers must establish or make good faith efforts to establish live contact with borrowers by the 36th day of their delinquency and promptly inform such borrowers, where appropriate, that loss mitigation options may be available." See 12 U.S.C. § 1024.39. A "delinquency" is defined as beginning on the day on which a payment sufficient to cover principal,

*EXHIBIT 6*

interest and escrow, if applicable, is due and unpaid. The new rules clearly implemented procedural protections for borrowers with regard to the process of obtaining an evaluation for loss mitigation options and restrictions on the foreclosure process while borrowers are being evaluated for a loss mitigation option. See 12 C.F.R. § 1024.41.

Notably, under RESPA, "[l]oss mitigation option means any alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." 12 C.F.R. § 1024.31. This definition was intended to be expansive, encompassing not just loan modifications, but also forbearance plans, short sale agreements, and deed-in-lieu of foreclosure programs. "Loss mitigation application means any oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option." Id.

Under RESPA, "[s]ervicer means a person responsible for servicing a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." Id. "Servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts . . . and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or contract." Id.

The servicer is required to promptly review the application and determine whether it is complete. If a borrower submits a complete application for a loss mitigation option at least 45 days before a foreclosure sale, the servicer must acknowledge receipt in writing within 5 days (excluding legal public holidays, Saturdays and Sundays) and must inform the borrower whether the application is complete and what information is required to complete the application. See 12 U.S.C. § 1024.41(b)(2)(B). A "complete loss mitigation" application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. See 12 U.S.C. § 1024.41(b)(1).

If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale for the borrower's property, then within 30 days of receiving the borrower's loss mitigation application the servicer must: "(i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage loan." Id. at § 1024.41(c)(1).

If a borrower's loss mitigation application is denied for any trial or permanent loan modification option, then the servicer shall state in the notice sent to the borrower pursuant to 12 C.F.R. § 1024.41(c) "[t]he specific reasons for the servicer's determination for each such trial or permanent loan modification option[.]" Id. at §1024.41(d)(1).

## THE DENIAL OF MY APPLICATION WAS IMPROPER AS SHELLPOINT FAILED TO COMPLY WITH 12 C.F.R 1024.41(d)

Pursuant to 12 C.F.R 1024.41(d) if the servicer denies the homeowner a loan modification, the servicer must state the "specific reason each modification option was denied". Supplement I to 12 C.F.R. Part 1024, Official Bureau Interpretations, provides the degree of specificity required of the servicer in denying a borrower for a loan modification. "For example, if the denial is based on investor requirements, the servicer must identify the owner or assignee of the loan and the requirement that is the basis of the denial. Additionally, if a loan modification is denied because of a 'net present value' calculation, the servicer must provide the borrower with the inputs used in the calculation."

In its letter, Shellpoint declined me for a standard modification claiming that that "an affordable monthly payment could be achieved without extending the maturity date beyond the maximum allowable term." Pursuant to 12 C.F.R 1024.41(d) if the servicer denies the homeowner a loan modification, the servicer must state the "specific reason each modification option was denied". Supplement I to 12 C.F.R. Part 1024, Official Bureau Interpretations, provides the degree of specificity required of the servicer in denying a borrower for a loan modification. "For example, if the denial is based on investor requirements, the servicer must identify the owner or assignee of the loan and the requirement that is the basis of the denial. Additionally, if a loan modification is denied because of a 'net present value' ("NPV") calculation, the servicer must provide the borrower with the inputs used in the calculation."

Shellpoint denied my loan claiming it could not reach an affordable payment which means the decision was based upon my income, an input for NPV. Therefore, the NPV calculations must be provided to me for my review. Additionally, Shellpoint infers that the maturity date cannot be extended "beyond the maximum allowable term" yet Shellpoint fails to provide that specific investor requirement if in fact there is such a requirement.

Using the criteria from RESPA, Regulation X, and the CFPB, Shellpoint had to do three things to properly deny my loan application. **First, it had to identify the owner or assignee of the loan. Second, it had to identify the specific requirement that I did not meet which Shellpoint failed to do. Third, it had to provide information and detail supporting its claim that that the term could not extended and the requirements, such as DTI, that establish "an affordable" payment.** Shellpoint had to provide any underwriting guidelines or requirements or restrictions as well as the specifics utilized in calculating eligibility such as interest rate, term and DTI. *Nash v. PNC Bank, N.A.*, CV TDC-16-2910, 2017 WL 1424317, at *4 (D. Md. Apr. 20, 2017) (denying defendant's motion to dismiss RESPA Claim because "'the specific applicable requirement' that was not met, the Court concludes that Nash has adequately alleged that the Denial Letter's explanation for denying his HAMP loan modification 'may lack the specificity required by 12 C.F.R. 1024.41(d).'")

Shellpoint failed to include in its denial letter the opportunity for me to appeal the denial pursuant to §1024.41(g), (3). The CFPB requires that the appeal must be reviewed by different personnel than those responsible for evaluating the borrower's application. And within 30 days of the borrower making an appeal, the servicer must provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based on the appeal. *Id.* at § 1024.41(h). RESPA also prohibits the practice of "dual tracking" while the loss mitigation process is under way. That is, a servicer is precluded from initiating foreclosure proceedings while a loss mitigation application is being processed. *Id.* at §1024.41(f), (g).

## NOTICE OF ERROR

As servicer of our mortgage loan, Shellpoint shall treat this as both a "Notice of Error" pursuant to the Real Estate Settlement Procedures Act (RESPA), subject to the response period set out in Regulation X, 12 C.F.R. §§ 1024.35(b)(1)-(11), and as a "Request for Information" pursuant to Sections 1024.35 and 1024.36(d)(2)(i)(B). Please note the same written inquiry from a borrower can both dispute a servicer's action and seek information, and that therefore, a request for information and a notice of error can be contained in the same writings or sent as separate writings. *See Amini v. Bank of Am. Corp.,* 2012 WF 398636(W.D. Wash. Feb 7, 2012); *Luciw v. Bank of Am.,* 2010 WL 3958715 (N.D. Cal Oct 7, 2010) (statute is drafted in the disjunctive so that request for account information alone, without statement that account is in error, is a valid qualified written request); *Goldman v. Aurora Loan Servs., L.LC.,* 2010 WF 3842308 (N.D. Ga. Sept, 2010)(same); *Rodeback v. Utal Fin.,* 2010 WL 2757243 (D. Utah July 13, 2010)(same).

CFPB regulations effective January 1, 2014, as well as RESPA itself, require servicers, through amendments made by the Dodd-Frank Act, to take timely action to correct errors relating to "avoiding foreclosure," suggesting that borrowers should be able to assert under RESPA errors related to loss mitigation. See 12 U.S.C. §§ 2605(k)(1)(C). Thus, CFPB's new provisions are relevant to this this Notice of Error, and pursuant to these new provisions, I request Shellpoint process this Notice of Error as follows:

The servicer must acknowledge receipt of a notice of error within five days (excluding holidays, Saturdays, and Sundays) after receiving the notice, rather than the twenty business day period under the former law. See Reg. X, 12 C.F.R. §§ 1024.35(d) (effective Jan. 10, 2014).

Alternatively, the servicer need not provide this acknowledgment or otherwise satisfy the compliance requirements if it corrects the error or errors asserted by the borrower, and notifies the borrower in writing of the correction, within the five business day period.

*See* Reg. X, 12 C.F.R. §§ 1024.35(d)-(f) (effective Jan. 10, 2014)

Specifically, as loan servicer, Shellpoint must confirm the identity of the owner of the subject loan, and the date such ownership became effective pursuant to Section 131(f) of the Truth-in-Lending Act, 15 U.S.C. Section 1641(f)(2) and to the Dodd-Frank Financial Reform Act ("Dodd-Frank Wall Street Reform and Consumer Protection Act") signed into law on July 21, 2010, which amends RESPA 12 U.S.C. § 2605(e)(1)(A) and Regulation X Section 3500.21(e)(1). Under these provisions, Shellpoint is held to a 10-business day response deadline in responding to this request of confirming the identity of the current owner of our loan, and **the date such ownership became effective** (proof of ownership). 12 U.S.C. § 2605(k)(1)(D).

Shellpoint is further advised that, under **recently-amended Section 6 of RESPA**, Shellpoint must acknowledge in writing its receipt of this QWR request within **five (5) business days** of receiving it; to issue a substantive response to the requested information within **thirty (30)** business days; and to reconcile existing irregularities or inconsistencies within **a maximum of forty-five (45)** business days (The Dodd-Frank Wall Street Reform and Consumer Protection Act allows for a 15-day extension *only* if I am informed about it and given the reasons for the extension). 12 U.S.C. § 2605(e). A failure to comply with this request may result in fines of up to $2,000.00 plus any attorney's fees and costs. 12 U.S.C. § 2605(f). In addition, Section 2605(e)(3) directs Shellpoint as the loan servicer to not report negative information regarding our account to a consumer reporting agency during the 60 days following receipt of the QWR concerning overdue payments related to that period or to the QWR.

Under RESPA, "[s]ervicer means a person responsible for servicing a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." 12 U.S.C. § 2605(i). "Servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts . . . and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or contract." *Id.* Based on the representations made to us and to our client and the foregoing definitions, it is clear that Shellpoint holds itself out as the servicer of our loan and that its activities with respect to the loan meet the definition of servicing.

Shellpoint is required to respond and correct the above noted errors as it is a standard servicer duty. Under 12 U.S.C. § 2605(k)(1)(C) a servicer shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or *avoiding foreclosure, or other standard servicer's duties.*" (emphasis added). Further, standard servicer's duties include working with investors and borrowers on options to mitigate losses for defaulted mortgage loans. 78 Fed. Reg. 10696–899,

10739 (February 14, 2013) (codified at 12 C.F.R. Part 1024); *see also id.* at 10699 (including within servicer duties "defining loss mitigation activities (including foreclosures and loan modifications) with respect to delinquent borrowers"); 12 C.F.R. § 1024.39 (establishing servicer obligation to engage in early intervention efforts with delinquent borrowers).

These "errors" on Shellpoint's part must be addressed and reconciled immediately, specifically, pursuant to Regulation X, 12 C.F.R § 1024.35(d) and (e), Shellpoint has 5 days within which to acknowledge receipt of this request and must respond no later than 7 days.

**Until these "errors" are properly addressed and corrected by Shellpoint, there can be no sale scheduled on our property. See Reg. X, 12 C.F.R. § 1024.35(e)(3)(i)(B) & § 1024.35(f)(2); Official Bureau Interpretation, Supplement 1 to Part 1024, ¶ 35(e)(3)(i)(B)-1.**

Be advised that RESPA and Regulation X provide a private right of action if a servicer fails to comply with the statute or regulation. 12 U.S.C. 2605(f); 12 C.F.R. §1024.41(a). I am a "borrower" entitled to the protections codified at 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41. The mortgage loan subject to this action is a federally related mortgage as defined in 12 C.F.R.1024.2 and involves a consumer transaction at the time the loan was taken out by the Plaintiff. Shellpoint is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.

Shellpoint violated the RESPA and Regulation X in the following ways:

- Denied my application without providing the specific reason for such a denial and additional detail to support such statements within 30 days of receipt of the application. 12 C.F.R. § 1024.41(c)(1) & (d); *see* 12 C.F.R. Pt. 1024, Supp. I, § 41(d), cmt. 1; *see* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01;
- Failed to provide me the opportunity to appeal the denial of the loan modification.

I trust that Shellpoint will comply with RESPA in responding to this letter.

Sincerely,

Joyce A. Baine

cc:    Consumer Financial Protection Bureau

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED





**shellpoint**
A DIVISION OF NEWREZ



S-SFRECS20  L-2111  R-106
PEJLUL00401461 - 674247355 I08762
CLARENCE T POULSON
JOYCE A BAINE
5741 CASTLE HILL RD
SNOW HILL MD 21863-4403

| CONTACT INFORMATION | |
|---|---|
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Mon - Thurs: 8:00AM-6:00PM |
| | Fri: 8:00AM-5:00PM |
| Phone Number: | 866-825-2174 |
| Fax: | 866-467-1187 |
| Email: | Lossmitigation@shellpointmtg.com |
| Website: | www.shellpointmtg.com |

Loan Number:   0579970118
Property:      5741 CASTLE HILL RD
               SNOW HILL, MD 21863                              08/06/2021

Dear Homeowners,

We understand that financial circumstances may change from time to time, which can affect your ability to meet your obligations. We're concerned about your recently missed mortgage payment(s) and want to offer our assistance in case you are unable to catch up.

This is a legally required notice. We are sending this notice to you because you are behind on your mortgage payment(s). As of the date of this letter, the total amount due is $46,393.23. Because interest, late charges, and other fees vary from day to day, the amount you owe may change. We want to notify you of possible ways to avoid losing your home. We have a right to invoke foreclosure based on the terms of your mortgage contract. Please read this letter carefully.

**Important note:** We have assigned a Single Point of Contact (SPOC) to assist you through the loss mitigation process concerning your mortgage loan. We will perform an evaluation of your financial condition and determine your qualifications for all alternatives that may be applicable for this account. Should you have any questions, you may contact Lynn Petersen directly at  ext. 14818 Monday through Thursday 8:00AM-6:00PM and Friday 8:00AM-5:00PM EST. Alternatively, you may visit our Borrower Web Portal at www.shellpointmtg.com or email your SPOC directly at lpetersen@shellpointmtg.com. Documents can be faxed to us at 866-467-1187.

If you have been impacted by COVID-19, you may qualify for a forbearance plan. If you qualify for a forbearance plan, you may be able to temporarily put a pause on your monthly mortgage payments. During this "forbearance period" you are not required to make your monthly mortgage payments, you will not be assessed any late charges, and negative credit reporting on your loan will be suspended. This means you will not be marked "late" for any suspended payments. Prior to the end of the forbearance period, you will need to contact us again to discuss a permanent payment option and solution.

We have informed credit bureaus about a late payment, missed payment or other default on your account. This information may be reflected in your credit report.

---

### We Are Here to Help - Call Us at 866-825-2174

Let us work with you to understand the issues affecting your mortgage payments. We'll explore what assistance may be available to you and discuss the forms and documentation needed to determine if you qualify for an option to avoid foreclosure.

**Consulte la página siguiente para obtener más información importante sobre cómo comunicarse con nosotros, las opciones disponibles y la información del consejero de vivienda en español.**

---

## Options May Be Available

The right option for you depends on your individual circumstances. When you provide the required information and documentation about your situation, we can determine if you qualify for temporary or long-term relief, including mortgage options that may allow you to stay in your home or leave your home while avoiding foreclosure.

If you need help, the following options may be possible (most are subject to lender approval):

- Refinance your loan with us or another lender;
- Modify your loan terms with us;
- Payment forbearance temporarily gives you more time to pay your monthly payment; or

EXHIBIT 7

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

B.I000001 A-0579970118 0103 10409

# Information on Avoiding Foreclosure



## Learn More About Options to Avoid Foreclosure

The variety of options summarized below may help you keep your home. For example, you may be eligible to modify your mortgage, lowering your monthly payment to make it more affordable. Contact us to determine if you qualify.

Depending on your circumstances, staying in your home may not be possible. In this case, a short sale or deed-in-lieu of foreclosure may be a better choice than foreclosure – see the table below for more information.

We want to advise you of the seriousness of the delinquency and the importance of taking prompt action to resolve the default. Don't delay, as failure to take action may result in foreclosure proceedings being initiated on your mortgage.

| OPTIONS TO STAY IN YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| Reinstatement | Pay the total delinquent amount you owe, both in a lump sum payment and by a specific date, or pay less than the total amount owed followed by a forbearance plan as described below. | Allows you to avoid foreclosure by bringing your mortgage current if you can show you have funds that will become available at a specific date in the future. |
| Repayment Plan | Pay back your past-due payments together with your regular payments over an extended period of time. | Allows you time to catch up on late payments without having to come up with a lump sum. |
| Forbearance Plan | Make reduced mortgage payments or no mortgage payments for a specific period of time. | Gives you time to improve your financial situation and possibly qualify for a better option than would be available right now. |
| Modification | Receive modified mortgage terms to make it more affordable or manageable after successfully making payments during a "trial period" (e.g., completing a three-month trial period plan) that requires payment of the approximate amount of the modified payment. | Permanently modifies your mortgage so that your payments or terms are more manageable as a permanent solution to a long-term or permanent hardship. |
| OPTIONS TO LEAVE YOUR HOME | OVERVIEW | BENEFIT |
| Short Sale | Sell your home and pay off a portion of your mortgage balance when you owe more on the home than it is worth. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |
| Deed-In-Lieu of Foreclosure | Transfer the ownership of your property to us. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |

## We Want to Help

Take action to gain peace of mind and control of your housing situation. Call us at 866-825-2174 and we'll talk about available options and help you understand the forms and documents we need from you to determine if you qualify for an option to avoid foreclosure.

EXHIBIT 8

Shellpoint Mortgage Servicing
2100 E ELLIOT RD BLG 94
TEMPE AZ 85284

11B1

US POSTAGE AND FEES PAID   **easypost**
2021-08-19
85284
C363112
Retail
3.0 OZ FLAT                           0901000002272



USPS CERTIFIED MAIL™

9414 8368 9784 6276 6866 93

CLARENCE POULSON
5741 CASTLE HILL RD
SNOW HILL MD 21863



75 Beattie Place, Suite 300
Greenville, SC 29601

Toll Free Phone: 1-800-365-7107
Toll Free Fax: 1-866-467-1187

*Hours of Operation*
Monday-Friday 8:00AM 10:00PM
Saturday 8:00AM-3:00PM

August 19, 2021

CLARENCE T POULSON
JOYCE A BAINE
5741 CASTLE HILL RD
SNOW HILL, MD 21863

RE:    Reference #:    0579970118
        Account #:    xxxx4044
        Property:    5741 CASTLE HILL RD
               SNOW HILL, MD 21863

Dear CLARENCE T POULSON and JOYCE A BAINE:

We received your inquiry regarding the above referenced mortgage loan, and we have provided the requested information below.

U.S. Bank National Association, as Trustee, for Manufactured Housing Contract Senior/Subordinate Pass-Through Certificate Trust 2000-5 is currently the owner of the account number ending in 4044. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on the behalf of the owner referenced above on or about March 16, 2020. As of the date of this response, the unpaid interest-bearing principal balance is $83,282.10. Note that interest, payments, credits, and other allowable charges may cause the loan's balance to vary daily; therefore, you should contact Shellpoint at (866) 316-4706 to determine the exact balance.

Shellpoint acknowledges receipt of your correspondence regarding your request to appeal a loss mitigation denial. Please know that Shellpoint takes its customer service and consumer protection obligations very seriously and has significant staff dedicated to its compliance related functions to identify, resolve, and permanently correct operational deficiencies and improve upon consumer concerns.

As you may know, the loan is delinquent and currently due for the August 1, 2019 through August 1, 2021 installments. Due to the loan's delinquency, the property was previously referred to an attorney to commence foreclosure proceedings on August 8, 2019 however, a sale date has not been scheduled at this time.

Upon review of your correspondence, Shellpoint's records indicate we have already received a previous correspondence either the same or similar, which we have already responded to. Since your additional correspondence did not provide any new or additional information for us to form the basis for a new investigation, our response remains the same. Therefore, we will not be conducting another investigation.

You have the right to request documentation supporting our determination that no error has occurred in the servicing of the loan. WE have enclosed the Prior Response dated July 13, 2021.

As of the date of the letter, you are due for the February 10, 2018 through August 10, 2021 monthly installments and the total amount due is $47,142.69. The following is a breakdown of the total amount due:

- Total Payments: $44,526.82
- Total Legal Fees: $2,642.37
- Total Other Fees: $243.50

Should you have further questions, you may reach us through our Contact Us page by accessing our website, shellpointmtg.com and log into your account. Go to the Help icon at the top right and click on Contact Us from the drop down. You can submit your email from there and upload any supporting documents.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 800-365-7107.

Sincerely,

Escalation Department
Shellpoint Mortgage Servicing

Enclosed:  Prior Response

---

Please read the following important notices as they may affect your rights.

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603.

Shellpoint Mortgage Servicing utilizes third-party providers in connection with the servicing of your loan, but Shellpoint Mortgage Servicing remains responsible for all actions taken by third-party providers.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, because of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail, or email to start the confirmation process.

Our system of record has your preferred language as English.

If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-365-7107 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.

如果您要使用英语以外的其他语言进行交流，请致电 800-365-7107，我们将根据您首选的语言安排相应的译员。与您就贷款服务事项或您所接收的文件进行商讨。

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.



75 Beattie Place, Suite 300
Greenville, SC 29601

Toll Free Phone: 1-800-365-7107
Toll Free Fax: 1-866-467-1187

*Hours of Operation*
Monday-Friday 8:00AM 10:00PM
Saturday 8:00AM-3:00PM

July 13, 2021

Joyce A. Baine
Via Email: jbattleb@verizon.net

RE:     Reference #:     0579970118
        Account #:       xxxx4044
        Property:        5741 Castle Hill Rd
                         Snow Hill, MD 21863

Dear Joyce A. Baine:

We received your inquiry regarding the above referenced mortgage loan, and we have provided the requested information below.

U.S. Bank National Association, as Trustee, for Manufactured Housing Contract Senior/Subordinate Pass-Through Certificate Trust 2000-5 is currently the owner of the account number ending in 4044. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on the behalf of the owner referenced above on or about March 16, 2020. As of the date of this response, the interest-bearing unpaid principal balance is $83,282.10. Note that interest, payments, credits, and other allowable charges may cause the loan's balance to vary daily; therefore, you should contact Shellpoint at (866) 316-4706 to determine the exact balance.

Shellpoint acknowledges the receipt of your correspondence to appeal of loan modification denial and notice of error on June 17, 2021 and on July 1, 2021. In the correspondence, you mentioned that the letter failed to provide you an opportunity to appeal that denial pursuant to the Consumer Financial Protection Bureau (CFPB). We apologize for any confusion that you have experienced as a result.

Our records indicate that the loan has been reviewed several times for loan modification on the following dates by the prior servicer, Ditech and Shellpoint, but the reviews resulted in denials due to the following reasons:

* September 12, 2018    Investor does not allow for past due amounts to be capitalized as a part of a loan modification
* September 10, 2019    Investor does not allow for past due amounts to be capitalized as a part of a loan modification
* June 9, 2020          Investor has declined this workout due to capitalization is not allowed
* May 27, 2021          An affordable monthly payment could not be achieved without extending the maturity date beyond the maximum allowable term

As a result of this limitation, a loan modification cannot be offered. Please understand that Shellpoint is required to review the loan's eligibility for a modification in accordance with the applicable program guidelines as well as based your eligibility on an assessment of your financial situation and several other factors. The modification terms are non-negotiable and cannot deviate from the investor/owner's terms.

Because the loan was reviewed without complete Borrower Response Packages on June 9, 2020 and May 27, 2021, the right to appeal were not included on the Evaluation Notices. In good faith, Shellpoint maintains that its servicing the loan pursuant to 12 C.F.R 10244.41, the original agreement and applicable law.

Please know that Shellpoint is committed to assisting homeowners experiencing financial difficulties with a variety of loss mitigation options to avoid foreclosure and allow homeowners to retain homeownership. Although the loan is ineligible for a loan modification, other workout options may be available including those provided below for which the loan is conditionally approved for, but the approval is not guaranteed:

* Short sale
* Deed-in-lieu

SCB07132021

Due to the loan's past due status, it was referred to an attorney to commence foreclosure proceedings on August 8, 2019. No foreclosure sale date is scheduled at this time.

As of the date of this letter, the account is due for the February 10, 2018 through the July 10, 2021 monthly installments. The total amount past due is $46,393.23. This amount includes total payments past due in the amount of $43,507.36, late charges in the amount of $0.00, and fees in the amount of $2,885.87. Note that this amount may not consist of the fees and costs associated with the active foreclosure proceedings.

If you have any further questions regarding to reinstatement, please contact our Loss Mitigation Department at (866) 825-2174, for further assistance.

You have the right to request documentation supporting our determination that no error has occurred in the servicing of the loan.

Should you have further questions, you may reach us through our Contact Us page by accessing our website, shellpointmtg.com and log into your account. Go to the Help icon at the top right and click on Contact Us from the drop down. You can submit your email from there and upload any supporting documents.

Si usted no entiende el contenido de esta carta, por favor comuníquese con uno de nuestros representantes que hablan español al número 800-365-7107.

Sincerely,

Escalation Department
Shellpoint Mortgage Servicing

Enclosures:     Evaluation Notices

### Please read the following important notices as they may affect your rights.

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address:  Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603.

Shellpoint Mortgage Servicing utilizes third-party providers in connection with the servicing of your loan, but Shellpoint Mortgage Servicing remains responsible for all actions taken by third-party providers.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

Our system of record has your preferred language as English.

If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

SCB07132021

Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-365-7107 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.

如果您要使用英语以外的其他语言进行交流，请致电 800-365-7107，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

SCB07132021



Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
Phone: 1-800-643-0202
www.ditech.com

09/12/2018

BAINE JOYCE A
5741 CASTLE HILL RD
SNOWHILL MD 21863

RE:     Ditech Financial LLC ("Ditech")
        Account Number: 21431769

Dear RICHARD:

Thank you for contacting us about your mortgage.  You were evaluated for mortgage payment assistance based upon the eligibility requirements of Green Tree Legacy, the owner of your mortgage account. Based on a careful review of the information you provided to us, you are not eligible for a modification due to the following reason(s):

 The investor on your account does not allow for past due amounts to be capitalized as part of a loan modification. As a result of this limitation, we are unable to offer you a modification.

You have the right to appeal the determination not to offer you loss mitigation assistance.  If you would like to appeal, you must contact us within 30 calendar days from the date of this notice and state you are requesting an appeal of this decision. For appeals requested in writing, you must include your name, property address and mortgage account number. You may also specify the reasons for your appeal and provide any supporting documentation. Your right to appeal expires 30 calendar days from the date of this notice. Any appeal requests or documentation received after that date may not be considered.  Please contact us Monday – Friday 7 a.m to 8 p.m., and Saturday 7 a.m to 1 p.m. CST at 1-800-643-0202, or at the below-referenced mailing address and fax number.

                        Ditech Financial LLC
                        Attn: Loss Mitigation, T214
                        2100 E. Elliot Rd, Bldg 94
                        Tempe, AZ 85284
                        (877) 612-2422

If you elect to appeal, we will provide you with a written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final and not subject to further appeal.


EQUAL HOUSING
LENDER

Generic Waterfall Modification Denial & Ineligible Letter, 01/18/2017                    LTR-423

Counseling is available at no charge from HUD-approved counselors through the HOPE Hotline: 1-888-995-HOPE.  This housing counseling on-demand service is available 24-hours a day/7-days a week in Spanish and English (other languages available on request).  You may also visit http://www.hud.gov/offices/hsg/sfh/hcc/fc/.

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information:  PO Box 6176 Rapid City SD 57709-6176.

Sincerely,

Ditech
1-800-643-0202
Monday – Friday 7 a.m to 8 p.m., and Saturday 7 a.m to 1 p.m. CST

Generic Waterfall Modification Denial & Ineligible Letter, 01/18/2017                                    LTR-423



**HOME LOANS**

Ditech Financial LLC
P.O. Box 15009
Tempe, AZ 85284-0109

September 10, 2019

JOYCE A BAINE
5741 CASTLE HILL RD.
SNOW HILL, MD. 21863

RE:     Ditech Financial LLC ("Ditech")
          Account Number:      70134044

**IF YOUR OBLIGATION TO REPAY THIS ACCOUNT WAS DISCHARGED IN BANKRUPTCY, ANY PAYMENT INDICATED HEREIN IS VOLUNTARY. THIS IS NOT AN ATTEMPT TO COLLECT THE DEBT.  YOU ARE NOT OBLIGATED TO MAKE PAYMENTS AND ANY AMOUNT(S) YOU DO PAY DITECH IS AT YOUR DISCRETION.**

Dear Joyce Baine:

Thank you for contacting us about your mortgage.  You were evaluated for mortgage payment assistance based upon the eligibility requirements of U.S. Bank National Association, as Trustee, for Manufactured Housing Contract Senior/Subordinate Pass-Through Certificate Trust 2000-5, the owner of your mortgage account. We have determined that you are ineligible for a mortgage modification due to the following eligibility requirements.

* The investor on your account does not allow for past due amounts to be capitalized as part of a loan modification. As a result of this limitation, we are unable to offer you a modification.

You have the right to appeal the determination not to offer you loss mitigation assistance.  If you would like to appeal, you must contact us within 14 calendar days from the date of this notice and state you are requesting an appeal of this decision. For appeals requested in writing, you must include your name, property address and mortgage account number. You may also specify the reasons for your appeal and provide any supporting documentation. Your right to appeal expires 14 calendar days from the date of this notice. Any appeal requests or documentation received after that date may not be considered.  Please contact us Monday – Friday 7 a.m. to 8 p.m. and Saturday 7 a.m. to 1 p.m. CST at 1-800-643-0202, or at the below-referenced mailing address and fax number.

Ditech Financial LLC
P.O. Box 15009
Tempe, AZ 85284-0109
Fax: 1-855-895-4481

If you elect to appeal, we will provide you a written notice of our appeal decision within 30 calendar days of receiving your appeal. Our appeal decision is final and not subject to further appeal.

You may be eligible for other workout options offered by Ditech because you are not eligible for the account modification.  Some of the programs that may be available include:

* Short Sale – A short sale allows you to avoid foreclosure by selling your property and paying off your account.  If you sell your property for less than the total amount owed on the account, Ditech may accept that amount as full satisfaction of your account.  Taking this action will not save your home, but Ditech may pay you cash upon completion of the sale of your home.

* Deed-In-Lieu of Foreclosure – A deed-in-lieu of foreclosure would allow you to voluntarily deed your property to Ditech in order to satisfy the account.  Taking this action will not save your home, but Ditech may pay you cash upon completion of the Program.

* Forbearance – A forbearance is when the lender delays its right to exercise foreclosure if the borrower can catch up to his payment schedule in a certain time.

Generic Modification Denial & Ineligible Letter, 12/28/2015

LTR-479

It is your responsibility to contact Ditech to discuss your above-referenced account. If you wish to explore your options or have any other questions, please contact your account representative. Your assigned account representative is Barbara B. at 1-855-858-3873, extension 86991.

Our credit decision may have been based in part upon information obtained in a report from the below-referenced consumer reporting agency listed. You have the right under the Fair Credit Reporting Act to obtain a free copy of your credit report. You must request your free copy within 60 days of the date of this letter. You also have the right to dispute the information contained in your credit report with the credit reporting agency. The credit reporting agency did not make the decision regarding your ineligibility and is not able to provide you with specific reasons as to why you are not eligible for a account modification.

| | |
|---|---|
| Credit Reporting Agency: | TRANSUNION |
| Reporting Agency Address: | 2 BALDWIN PLACE, P.O. BOX 1000 CHESTER, PA 19022 |
| Toll Free Number: | 800-888-4213 |
| Web Address: | http://www.transunion.com |

We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change, depending on how the information in your consumer report changes.

Your credit score: Not Scored

Date: N/A

Scores range from a low of 350 to a high of 850

Key factors that adversely affected your credit score:

If you have any questions regarding your credit score, you should contact TRANSUNION at:

Address: 2 BALDWIN PLACE, P.O. BOX 1000 CHESTER, PA 19022    Telephone number: 800-888-4213

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, which can be contacted at:

Federal Trade Commission
Equal Credit Opportunity
Washington, DC 20580

Counseling is available at no charge from HUD-approved counselors through the HOPE Hotline: 1-888-995-HOPE. This housing counseling on-demand service is available 24-hours a day/7-days a week in Spanish and English (other languages available on request). You may also visit **http://www.hud.gov/offices/hsg/sfh/hcc/fc/**.

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information:  P.O. BOX 15009 Tempe, AZ 85284-0109

Sincerely,


Ditech
1-800-643-0202
Monday – Friday 7 a.m. to 8 p.m. and Saturday 7 a.m. to 1 p.m. CST


Generic Modification Denial & Ineligible Letter, 12/28/2015                                    LTR-479

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**Shellpoint**
Mortgage Servicing

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com
**Mon. - Thurs:** 8:00AM-6:00PM
**Fri:** 8:00AM-5:00PM

S-SFRECS20 L-2501 R-106
PC9E3B00200032 - 625235037 I00094

CLARENCE T POULSON
JOYCE A BAINE
5741 CASTLE HILL RD
SNOW HILL MD 21863-4403

| Loan Number: | 0579970118 |
|---|---|
| Principal Balance: | $83,282.10 |
| Property: | 5741 CASTLE HILL RD SNOW HILL, MD 21863 |

06/09/2020

Dear Homeowners:

Thank you for contacting us about your mortgage. You were evaluated for mortgage payment assistance based on the eligibility requirements of U.S. Bank National Association, as Trustee, for Manufactured Housing Contract Senior/Subordinate Pass-Through Certificate Trust 2000-5, the owner of your mortgage loan.

We evaluated you for the following loan modification product(s). Based on our review of your loan, property and financial circumstances, you are not eligible for the following loan modification due to the following reason(s):

- Standard Modification – The investor (owner of your loan) has declined this workout.

**Other potential options to avoid foreclosure.** We understand that you may be facing financial difficulties. While Shellpoint is not able to approve you for a loan modification, we may have other programs available to help.

While it may be difficult to make the decision to leave your home, you are conditionally approved for the programs listed below. These can allow you a fresh start toward a new home, and may even pay you to help cover relocation expenses. Please call us at 866-825-2174 to discuss further documentation required for these programs in order to be fully approved.

- **Short Sale** – A short sale involves the sale of the home for less than the balance you owe. If the owner of your loan agrees to a short sale, you can sell your home and pay off all (or a portion of) your balance with the proceeds.
- **Deed-in-Lieu of Foreclosure** – With a Deed-in-Lieu of Foreclosure, you transfer the title of your property to the owner of your mortgage in exchange for a release from your loan and payments.

The most important thing is to avoid foreclosure, but there are other benefits to the fresh start options that may be available to you.

**Benefits include:**
- Eliminate your remaining mortgage debt
- Avoid the negative impact of a foreclosure
- May be eligible for relocation assistance
- Start repairing your credit sooner than if you went through a foreclosure
- Flexible exit options let you leave the home immediately, or consider other ways to transition

**If you can, please pay in full immediately.** We recognize that being denied for a loan modification may be disappointing news for you. However, in order to avoid additional expenses resulting from late payments and to avoid foreclosure, it is important that you make the full payment listed above or contact us regarding the additional option we presented above as quickly as possible.

Remember, your mortgage payment was due on 02/10/2018 and has accrued late charges of $0.00. To avoid additional foreclosure activity, it is important that you make your full mortgage payment and late charges in the amount of $31,742.42 immediately.

Please send your payment to:

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001 A-0579970118 0102J0400

If your mortgage loan is reinstated and you subsequently experience a financial hardship, you may contact us to request reconsideration for mortgage payment assistance or other alternatives to foreclosure.

If you have questions about this letter and how to reinstate your mortgage, please contact us at 866-825-2174. If you have concerns about the evaluation of your mortgage for foreclosure alternatives, then please contact Ana Mike at 877-395-8363.

Making decisions about your mortgage when you're facing financial challenges can be uncomfortable. With so much information available, it's hard to know where to turn. Shellpoint is ready to assist you in exploring the best option for your individual situation!

For future communications regarding the status of your loan or your application for loss mitigation, you may contact your SPOC (Single Point of Contact) by phone at 877-395-8363 ext. 14792. Alternatively, you may visit our Borrower Web Portal at www.shellpointmtg.com or email your SPOC directly at amike@shellpointmtg.com.

---

### Additional Resources:

For a list of HUD-approved housing counseling agencies that can provide free foreclosure prevention and debt management information, as well as translation or other language assistance, contact one of the following federal government agencies.

- The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling
- The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

---

Sincerely,

Loss Mitigation Department
Shellpoint Mortgage Servicing



 

1000     21202

U.S. POSTAGE PAID
PGM 1ZEN
TOWSON, MD
21285
JUL 20, 22
AMOUNT

**$11.09**

R2303S103143-14

Law Office of
**GERARD P. UEHLINGER, P.C.**
SUITE 1210
28 WEST ALLEGHENY AVENUE
TOWSON, MARYLAND 21204-3919

**RETURN RECEIPT
REQUESTED**

Newrez, LLC d/b/a
Shellpoint Mortgage Servicing
**SERVE RESIDENT AGENT:**
CSC – Lawyers Incorporating
 Service Company
7 St. Paul Street, #820
Baltimore, MD 21202